the Holy Cross Cemetery constitute an appropriate bargaining unit.

Defendant's proofs established that its cemeteries are operated and conducted as a single enterprise. All are supervised by a single Director of Cemeteries. Unlike the situation in *N. L. R. B. v. Western and Southern Life Insurance Company, supra,* on which plaintiff relies, none of the cemeteries functions as an autonomous unit vis-a-vis the other cemeteries. On the contrary, all are controlled and directed from a single office; and all conditions of employment, including salaries, fringe benefits, hours, and rules and regulations governing employees, are the same at all seven cemeteries.

In those circumstances, we conclude that the production and maintenance employees at all seven cemeteries have such a community of interest that a bargaining unit which does not include all those employees is not an appropriate unit for collective bargaining.

The judgment is reversed and judgment entered in favor of defendant. No costs to either party.

STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. ANTHONY RUSSO, HENRY DE BENEDICTIS, EMIL MENSORIO, PERRY IOMMAZZO, WILLIAM CHIANDUSSE, ARTHUR CORA, RICHARD DAVIDSON, DAVID DE PALMA, DAVID EDELMAN, THOMAS FORMOSO, MICHAEL MULLINS, ANNA NICKAS AND BERNARD TEMEL, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 25, 1974—Decided March 26, 1974.

287

Before Judges COLLESTER, LYNCH and MICHELS.

*Mr. James A. Mayer,* Assistant Prosecutor, argued the cause for appellant (*Mr. Alfred L. Genton,* Acting Bergen County Prosecutor, attorney).

*Mr. Anthony A. Kress* argued the cause for respondents Perry Iommazzo and Arthur Cora.

*Mr. James D. Checki, Jr.* argued the cause for respondent Richard Davidson (*Messrs. Checki & Politan,* attorneys).

*Messrs. Ryan & Sommers,* attorneys for respondent Emil Mensorio, join in the brief of respondent Richard Davidson.

PER CURIAM. Defendants were indicted for conspiracy to violate the gambling laws and separately indicted for various substantive gambling offenses. The indictments resulted in part from tape recorded conversations following the wire-tapping of six telephones during January 1973 which was authorized by the court pursuant to *N. J. S. A.* 2A:156A–1 *et seq.* The conversations were recorded on 57 tapes covering a period of over 102 hours and included both irrelevant as well as allegedly incriminatory conversations.

Following a pretrial conference the court ordered that the State disclose and make available to defendants copies of all tapes to be played in the presence of the State's representatives, that all defendants should have the right to take notes thereof stenographically or otherwise and make duplicate recordings of the conversations at their own expense. The order further directed that the State transcribe all of the tapes which the State intends to use at the trial and to furnish copies thereof to defendants' attorneys. In addition the court, over the State's objection, ordered that all the tape recordings taken by the State during January 1973 be transcribed in full (including both irrelevant and allegedly incriminatory conversations) and that copies thereof be furnished to the defendants' attorneys. We granted the State's motion for leave to appeal.

The State has prepared composite "work copies" of portions of the original tapes containing relevant and incriminatory conversations which it intends to offer in evidence at trial as proof of the crimes charged and will provide defense

counsel with transcripts thereof. However, it contends the court exceeded the bounds of judicial discretion in directing that transcripts of all conversations recorded on the 57 tapes be furnished to the defendants. The State estimates that transcripts of the 102 hours of recorded conversations, which contain irrelevant conversations, will consist of 5,000 pages at an estimated cost of over $5,000. It argues that the rules of discovery do not require that transcripts of all the tapes should be furnished to defendants and also that defendants can have access to such tapes and make such copies as they require at their own expense.

██ ██ *R.* 3:13–3(a) provides that the prosecutor shall permit defendant to inspect and copy and photograph, *inter alia,* specified documents, statements, records and reports. It does not require the prosecutor to furnish at the State's expense transcripts of taped conversations which are irrelevant, immaterial and nonincriminatory. Defendants, in the instant case, can under the terms of the order have access to all the tape recordings and make copies thereof at their own expense. While broad discretion is vested in the trial judge to permit access to relevant portions of intercepted communications, *State v. Dye,* 60 *N. J.* 518, 533 (1972), we are satisfied that the trial judge mistakenly exercised such discretion in directing the State to provide transcripts of all conversations recorded on the tapes.

Reversed.